UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HOWARD RANDALL, TRUSTEE, etc.,

                Plaintiff,

         -against-                                15-cv-7759 (LAK)

FIFTH STREET FINANCE CORP., et al.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ROBERT J. HURWITZ, etc.,

                Plaintiff,

         -against-                                15-cv-8908 (LAK)

FIFTH STREET FINANCE CORP., et al.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER WITH RESPECT TO
SELECTION OF LEAD PLAINTIFF AND LEAD COUNSEL**

LEWIS A. KAPLAN, *District Judge.*

       The matter is before the Court on two competing motions[1] for, among other things,

appointment as lead plaintiffs and approval of lead counsel for the class.  The remaining movants

are (1) Joseph Sacco and Arthur Stein, two individuals who seek appointment as co-lead plaintiffs

and approval of their selection of Levi & Korsinsky LLP ("L&K") as lead counsel [DI 53],[2] and (2)

---

[1]      There were originally six competing motions, but four movants have withdrawn.

[2]      Although Sacco and Stein's memorandum of law in support of their lead plaintiff motion
mentions only L&K as their proposed lead counsel, *see* DI 54 at 1, both their notice of

2

Oklahoma Police Pension and Retirement System ("OPPRS"), an institutional plaintiff who seeks appointment as lead plaintiff and approval of its selection of Labaton Sucharow LLP ("Labaton Sucharow") as lead counsel [DI 56].

The movants dispute which putative lead plaintiff suffered the largest loss during the proposed class period, a designation which affords a party a "presumption" as the most adequate lead plaintiff in a putative class action subject to the Private Securities Litigation Reform Act ("PSLRA").[3] Sacco claims he lost $112,663.58 as a result of transactions in Fifth Street Finance Corp. ("Fifth Street") common stock during the class period, and Stein claims he lost $99,664.93 [DI 55-2]. The two claim a collective loss of $212,328.51. OPPRS contends, however, that Sacco and Stein overstate their losses both individually and collectively by using an improperly low 90-day look-back price for Fifth Street stock in their loss calculations [DI 61 at 6-8]. According to OPPRS, Sacco's alleged loss should be only $90,550, Stein's only $70,738, and their combined loss only $161,288. Sacco and Stein respond that their loss calculations during the 90-day look-back period were not based on the "actual closing price" of Fifth Street common stock, but rather on the

_____

motion and the brief itself purport to be submitted also by the Vincent Wong Law Office ("Vincent Wong"), which is listed as "Additional Counsel." DI 53 at 2; DI 54 at 15. It is unclear what this designation means. What is clear, however, is that Sacco and Stein failed to comply completely with this Court's order to provide copies of its fee arrangements with its "proposed lead counsel, and any other counsel that purport to represent them in this action." DI 67 at 3. The movants provided a copy of their fee arrangement with L&K, but not with Vincent Wong. *See* DI 77 (under seal). Accordingly, the Court considers Sacco and Stein's motion as though it were submitted solely by L&K, and assumes that Vincent Wong will play no role in this litigation if Sacco and Stein were appointed lead plaintiffs.

[3]  15 U.S.C. § 78u-4.

3

"adjusted closing price," which accounts for "distributions or corporate actions occurring prior to the market opening on the following day" [DI 74 at 2-3].[4]

      The other putative lead plaintiff, OPPRS, claims it lost $115,195 during the class period. Sacco and Stein argue, however, that OPPRS failed to account for its sale of 10,100 shares of Fifth Street common stock before the end of the class period, and that its alleged losses, adjusted to include that sale, would be only $92,831 [DI 63 at 1-3]. OPPRS replies that it appropriately excluded that sale because it calculated its losses using the first-in-first-out ("FIFO") accounting method, and not the last-in-first-out ("LIFO") method [DI 72 at 4-6].

      But the disputes do not end there. Each movant attacks also the other's fitness to serve as lead plaintiff of the putative class. OPPRS accuses Sacco and Stein's lead plaintiff motion of being the product of an inappropriate solicitation campaign by their proposed counsel, which raises concerns that Sacco and Stein's counsel, and not the plaintiffs themselves, would control the litigation if their motion is granted [DI 61 at 8, 16-17]. OPPRS argues also that Sacco and Stein would be inadequate lead plaintiffs because they are "unsophisticated individual investors with no apparent understanding of the significant responsibilities associated with serving as Lead Plaintiff" [DI 61 at 17]. Not to be outdone, Sacco and Stein accuse OPPRS of being involved in so many other securities lawsuits that "its ability to actively monitor this litigation is severely undermined by the fact that it is already supposedly monitoring a number of other lawsuits" [DI 74 at 3-5]. To drive this point home, Sacco and Stein's attorney attaches to his declaration over 80 pages of

---

[4] Sacco and Stein claim that "[t]he 'adjusted' closing price of a stock is generally accepted as a more accurate reflection of a stock's value," although they cite no authority for this proposition and cite no case endorsing the "adjusted closing price" calculation method.

4

OPPRS board meeting minutes that purport to demonstrate that its resources are spread thinly and that it has given short shrift to the various cases it monitors [*see* DI 75-3].

*Discussion*

As an initial point, the Court will consider Sacco and Stein as individual movants and not as a group. The Court sees no added value from combining the two individual investors as co-lead plaintiffs, particularly where, as here, they appear to be complete strangers brought together by their proposed counsel in an effort to maximize their combined losses for the purposes of this motion.[5] Indeed, this Court already said as much to OPPRS and its proposed co-lead plaintiff, Howard Randall [*see* DI 67 at 2], after which Mr. Randall withdrew from lead plaintiff consideration and threw his support behind OPPRS [DI 72 at 1 n.2]. Accordingly, the Court will consider Sacco and Stein as individual movants both proposing L&K as lead counsel.

The Court next turns to the plaintiffs' alleged losses. If Sacco and Stein's arguments about LIFO/FIFO and adjusted closing price are correct, the movants' alleged losses look like this:

| Movant | Alleged Loss |
|---|---|
| Sacco | $112,664 |
| Stein | $99,665 |
| OPPRS | $92,831 |

---

[5] *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) ("'To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation. Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff.'") (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997)).

If, however, the Court accepts OPPRS's arguments, the movants' alleged losses look like this:

| Movant | Alleged Loss |
|--------|--------------|
| OPPRS | $115,195 |
| Sacco | $90,550 |
| Stein | $70,738 |

Other outcomes would result if, for example, the Court accepted Sacco and Stein's argument that losses should be calculated using LIFO, but accepted also OPPRS's argument that a stock's actual closing price should be used to calculate losses during the 90-day look-back period. There is no need, however, to list all possible permutations here, because the difference in their alleged losses would be insubstantial no matter how they are calculated.

It is true that, under the PSLRA, there is a presumption that the most adequate plaintiff to serve as lead plaintiff is the one that "in the determination of the court, has the largest financial interest in the relief sought by the class."[6] This presumption is premised in part on the idea that the plaintiff with the largest financial stake in the litigation is most likely to manage the litigation actively. But this concept has its limits. As the difference among competing plaintiffs' alleged losses shrinks, so too does the persuasiveness of the presumption. Indeed, some courts have declined to afford this presumption to movants – particularly individual investors – when the difference between their alleged losses and those of competing movants – particularly institutional investors – was "minimal."[7] Accordingly, the Court declines to untangle the web of competing

[6]

    15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

[7]

    *E.g.*, *Juliar v. Sunopta Inc.*, No. 08-cv-933 (PAC), 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) ("[Institutional investor] claims losses of $210,993, approximately $30,000 less than [individual investor group's] aggregated losses. This difference is minimal and, in this case, does not overcome a presumption inherent in Congress' enactment of the PSLRA that

6

accounting and valuation methods at issue, and assumes that Sacco, Stein, and OPPRS each allege

losses that are approximately equal and that each movant has much the same economic incentive

to monitor and control the litigation and economic interest in the possible recovery.

   The Court bases its decision, then, on the Congressional preference for institutional

lead plaintiffs in private securities class actions. This preference is clear from the PSLRA's

legislative history[8] and has been recognized by numerous courts.[9] Indeed, the preference for

institutional lead plaintiffs was part of the reason Congress added to the PSLRA the provision

granting a presumption in favor of the plaintiff with the largest financial interest in the litigation.[10]

In these circumstances, and bearing in mind the failure of either Sacco or Stein to show any

particular and relevant investment and litigation expertise, the clear choice for lead plaintiff is

OPPRS, the only movant that is an institutional investor.

---

institutional investors serve as better lead plaintiffs."); *see also Freedman v. Weatherford Int'l Ltd.*, No. 12-cv-2121 (LAK), DI 31, (S.D.N.Y. July 10, 2012) (appointing institutional investor lead plaintiff over competing individual investor who allegedly lost $165,000 more during the class period, when institutional investor was more "sophisticated" and had selected a larger, better-known law firm with extensive experience in securities litigation).

[8] *See* H.R. CONF. REP. 104-369, at 32-35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731-34 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class action."); S. REP. NO. 104-98, at 10-12 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 689-91.

[9] *E.g., Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, No. 15-cv-3599 (KMW), 2015 WL 7018024, at *3 (S.D.N.Y. Nov. 12, 2015); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99-100 (S.D.N.Y. 2005).

[10] S. REP. NO. 104-98, at 11, *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff.'").

7

*Conclusion*

OPPRS's motion [DI 56] is granted to the extent that (1) OPPRS is appointed lead plaintiff, and (2) OPPRS's selection of Labaton Sucharow as lead counsel is approved. OPPRS's motion is denied in all other respects. Sacco and Stein's motion [DI 53] is denied.

SO ORDERED.

Dated:          February 1, 2016

_____
Lewis A. Kaplan
United States District Judge